IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SERGIO LEANOS,

    Plaintiff,

v.                                                                                                 1:21-cv-00091-LF

KILOLO KIJAKAZI,[1] Acting Commissioner
of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Sergio Leanos's Motion to Reverse and Remand for Rehearing, with Supporting Memorandum (Doc. 28), which was fully briefed on February 16, 2022. *See* Docs. 32, 33, 34. The parties consented to my entering final judgment in this case. Docs. 4, 13, 14. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") erred by failing to adequately assess Mr. Leanos's reported symptoms. I therefore GRANT Mr. Leanos's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.    **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.    Background and Procedural History

Mr. Leanos was born in 1976, has an eighth-grade education, and worked as a janitor, a cook, a floor technician, and as a stocker in a department store. AR 70, 238, 272.[4] He filed an application for Supplemental Security Income ("SSI") on September 27, 2018, alleging disability since January 5, 2018, due to degenerative disc disease, diabetes, fatigue, headaches, memory issues, anxiety, depression, and balance problems. AR 221–22, 271. The Social Security Administration ("SSA") denied his claim initially on January 31, 2019. AR 130–33. The SSA

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 17-1 comprises the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

denied his claim on reconsideration on July 19, 2019. AR 137–41. Mr. Leanos requested a hearing before an ALJ. AR 142–44. On September 11, 2020, ALJ Jeffrey Holappa held a hearing. AR 33–75. ALJ Holappa issued an unfavorable decision on October 16, 2020. AR 15–32.

At step one, the ALJ found that Mr. Leanos had not engaged in substantial, gainful activity since his application date.[5] AR 20. At step two, the ALJ found that Mr. Leanos suffered from the following severe impairments: degenerative disc disease of the lumbar spine, sacroiliac joint disfunction, asthma, anxiety, and depression. *Id.* At step three, the ALJ found that none of Mr. Leanos's impairments, alone or in combination, met or medically equaled a Listing. AR 21–22. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Leanos's RFC. AR 22–26. The ALJ found Mr. Leanos had the RFC to

> perform sedentary work as defined in 20 CFR 416.967(a) except the claimant is limited to occasional climbing of ramps and stairs, never climbing ladders or scaffolds, and occasional balancing, stooping, kneeling, crouching and crawling; is also limited to a medically required hand-held assistive device (cane) for ambulation; is further limited to no concentrated exposure to dust, odors, fumes, pulmonary irritants, and no exposure to unprotected heights or moving mechanical parts; is limited to understanding, remembering, and carrying out simple, routine tasks, making simple work-related decisions, dealing with changes in a routine work setting, maintaining concentration, persistence, and pace for at least two hour intervals, and occasional interactions with supervisors and co-workers, but no interaction with the general public.

AR 22.

At step four, the ALJ concluded that Mr. Leanos was unable to perform his past relevant work as a stocker, dietary aide, floor technician, or janitor. AR 27. The ALJ found Mr. Leanos

---

[5] The ALJ lists Mr. Leanos's application date as September 26, 2018. AR 20. The correct application date is September 27, 2018. AR 221–22.

4

not disabled at step five because he could perform jobs that exist in significant numbers in the national economy—such as envelope stuffer, final assembler, and table worker.  AR 27–28.

On October 22, 2020, Mr. Leanos requested review of the ALJ's unfavorable decision by the Appeals Council.  AR 217–20.  On December 9, 2020, the Appeals Council denied the request for review.  AR 1–6.  Mr. Leanos timely filed his appeal to this Court on February 4, 2021.[6]  Doc. 1.

## IV.   Ms. Leanos's Claims

Mr. Leanos raises three arguments for reversing and remanding this case:  (1) the ALJ improperly analyzed the opinion of Certified Nurse Practitioner Kimberlee Dutton; (2) the ALJ improperly analyzed his mental limitations; and (3) the ALJ failed to properly assess the subjective symptoms and limitations he reported.[7]  *See* Doc. 28.  For the reasons discussed below, I find that the ALJ failed to adequately assess Mr. Leanos's reported symptoms, and I remand on this basis.  I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V.   The ALJ failed to adequately evaluate Mr. Leanos's subjective symptoms.

Mr. Leanos argues that the ALJ failed to adequately consider his subjective symptoms.  Doc. 28 at 14–16.  Mr. Leanos asserts that the ALJ did not give adequate reasons grounded in the record for rejecting his statements and hearing testimony regarding the severity and limiting effects of his impairments.  *Id*. at 14.  Mr. Leanos also argues that the ALJ failed to adequately

---

[6] A claimant has 60 days to file an appeal.  The 60 days begins running five days after the decision is mailed.  20 C.F.R. § 404.981; *see also* AR 2.

[7] In his opening brief, Mr. Leanos also argued that the ALJ's authority was constitutionally defective.  Doc. 28 at 17.  Mr. Leanos, however, conceded this argument in his reply.  Doc. 33 at 7.

consider his pain, as required by SSR 16-3p and SSR 96-8p. *Id.* at 15–16. The Commissioner argues that the ALJ provided "a sufficient rationale in his decision" and that substantial evidence supports the ALJ's evaluation of Mr. Leanos's reported symptoms. Doc. 32 at 15–19. For the reasons explained below, I agree with Mr. Leanos.

When evaluating a claimant's symptoms, the ALJ must use the two-step framework set forth in 20 C.F.R. § 416.929. First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 416.929(b). Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. 20 C.F.R. § 416.929(c).

"The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). In addition, the ALJ is required to

> explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in his or her record and how [the ALJ's] evaluation of the individual's symptoms led to [the ALJ's] conclusions. [The ALJ] will evaluate an individual's symptoms considering all the evidence in his or her record.

SSR 16-3p, 2017 WL 5180304, at *8.

> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual

and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

*Id*. at *10.

The ALJ completed the first step for evaluating Mr. Leanos's symptoms, finding that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 23; 20 C.F.R. § 416.929(b). However, the ALJ did not adequately complete the second step for evaluating Mr. Leanos's symptoms—assessing the intensity and persistence of his alleged symptoms and how these symptoms impact his ability to work. *See* 20 C.F.R. § 416.929(c). The ALJ failed to provide "specific" or "clearly articulated" reasons for the weight he gave to Mr. Leanos's symptoms, and the cursory reasons the ALJ gave are neither "consistent with" nor "supported by" the evidence. SSR 16-3p, 2017 WL 5180304, at *10; *see also* SSR 96-8p, 1996 WL 374184, at *7.

The ALJ summarized Mr. Leanos's symptom testimony as follows:

> The claimant testified he lives alone in an apartment. He does not drive, and will get transportation from his caretaker. He stopped working due to physical pain limiting his ability to squat, bend, and walk. He stated he has difficulty walking 10 minutes, and his pain is located in his lower back and legs, right greater than left. The claimant testified his pain level is 7-8 out of 10 on a pain scale with medication. He stated he cannot lift anything heavier than a book. He can walk for 2-3 minutes before needing to stop and rest due to pain in his back and legs. Treatment includes water physical therapy, medication, and injections, but he testified these do not help relieve his pain. He sleeps only about 3-4 hours a night due to pain and "thinking about a lot of stuff." He needs help getting out of bed, dressing, bathing, and using the bathroom. He has difficulty turning the water on in the shower, getting into the shower, and putting on clothes and shoes because he cannot bend down or reach. Daily activities include reading and writing letters and watering his plants, but he stated he does not do any household chores. He has not been shopping in four years. He walks around the house for 15 minutes a day, but does not go outside. He has been using a cane for 3-4 years, prescribed by a doctor. He has a history of falls, with his last fall occurring in March 2020 in the bathroom, after which he went to the emergency department. He avoids going outside due to fear of falling. Additionally, the claimant takes medication for anxiety. Symptoms of anxiety include racing heart, dizziness, and feeling like he is going to pass out.

AR 23.  The ALJ's summary fairly captures most of Mr. Leanos's symptom testimony.  *See* AR 42–68.  In addition, Mr. Leanos testified that he has caregiver who comes to his house Monday through Friday for three hours a day.  AR 42.  The caregiver cooks meals for him, helps him stand up from bed in the morning, and helps him use the bathroom, shower, and get dressed.  AR 59–62.  The ALJ noted Mr. Leanos's reliance on a caregiver later in his decision.  *See* AR 25.

While the ALJ accurately summarized Mr. Leanos's numerous reported symptoms and limitations, the ALJ's analysis of Mr. Leanos's symptoms is limited to a single paragraph:

> Overall, the undersigned finds the claimant's statements and hearing testimony regarding the severity and limiting effects of his impairments to not be entirely consistent with the totality of the objective medical record.  The medical record does not support the substantially greater limitations opined by Ms. Dutton as discussed above.  However, the claimant's subjective reports of symptoms and limited activities of daily living is wholly inconsistent with the primarily mild to moderate objective medical evidence.  Imaging from 2012 through 2019 is all generally mild to moderate for degenerative changes inconsistent with the claimant's report of symptoms.  (i.e., Exhibit B5F/25).  Treatment has been conservative with physical therapy, medications, and injections.

AR 26.

The first sentence of the ALJ's discussion of Mr. Leanos's symptoms is exactly the type of "conclusory statement" prohibited by the regulations.  *See* SSR 16-3p, 2017 WL 5180304, at *8 (wholly insufficient for ALJ to merely state that "the statements about the individual's symptoms . . . are not . . . supported or consistent").  In the second sentence, the ALJ stated that "[t]he medical record does not support the substantially greater limitations opined by Ms. Dutton as discussed above."  AR 26.  CNP Dutton opined that Mr. Leanos would require "frequent breaks to sit due to spinal stenosis of lumbar region"; would need to use a cane to sit, stand, and walk as a form of support; would be unable to lift, push or pull "heavy objects"; and would be limited in his abilities to squat and bend.  AR 437.  The ALJ found CNP Dutton's opinion "unpersuasive" because the opinion (1) was "inconsistent with the totality of the record"; (2) was

"vague" because it used the term "heavy objects"; (3) was an overstatement of the claimant's limitations based on the objective medical evidence; and (4) relied on Mr. Leanos's subjective complaints as opposed to objective findings. AR 26. This analysis of CNP Dutton's opinion, however, cannot substitute for an analysis of Mr. Leanos's reported symptoms and limitations. First, while there is some overlap, the limitations in CNP Dutton's opinion are not the same as the symptoms and limitations reported by Mr. Leanos. Second, although the ALJ claimed CNP Dutton's opinion was "inconsistent" with the medical evidence and not supported by the objective medical evidence, he offered no analysis and cited no evidence to support these claims. *See id.* Thus, the ALJ's analysis of CNP Dutton's opinion provides little insight into why the ALJ discounted Mr. Leanos's reported symptoms and limitations.

In assessing Mr. Leanos's RFC, the ALJ first summarized Mr. Leanos's reported symptoms and limitations. AR 23. The ALJ then stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id*. But the ALJ's decision is devoid of any actual discussion or analysis of how Mr. Leanos's reported symptoms are inconsistent with any of the evidence. *See* AR 23–26 (objective summary of medical evidence with no analysis of how this evidence supports or contradicts Mr. Leanos's reported symptoms); AR 24 (discussion of persuasiveness of medical opinions with no analysis of how this evidence supports or contradicts Mr. Leanos's reported symptoms and limitations).[8]

---

[8] The ALJ included a few cursory sentences within his summary of the objective medical evidence about RFC limitations. AR 24 ("Appropriate limitations have been included within the residual functional capacity above, including limiting the claimant to a reduced range of sedentary work and the requirement for use of an assistive device (cane)."); AR 25 ("Again, appropriate limitations have been included within the residual functional capacity above,

9

The only reasons the ALJ gave for discounting all of Mr. Leanos's reported symptoms and limitations are found in the final two sentences of the RFC analysis:

(1) "Imaging from 2012 through 2019 is all generally mild to moderate for degenerative changes inconsistent with the claimant's report of symptoms. (i.e., Exhibit B5F/25 [AR 462])";
(2) "Treatment has been conservative with physical therapy, medications, and injections."

AR 26. These cursory reasons do not "explain which of [Mr. Leanos's] symptoms [the ALJ] found consistent or inconsistent with the evidence in his . . . record[,]" nor do they show "how [the ALJ's] evaluation of [Mr. Leanos's] symptoms led to [the ALJ's] conclusions." *See* SSR 16-3p, 2017 WL 5180304, at *8. In addition, the cursory reasons the ALJ gives for discounting Mr. Leanos's symptoms are not "consistent with" or "supported by" the evidence. SSR 16-3p, 2017 WL 5180304, at *10; see also SSR 96-8p, 1996 WL 374184, at *7.

First, it is unclear to the Court how the fact that Mr. Leanos's imaging showed mild to moderate degenerative changes is inconsistent with his reported symptoms. The exhibit cited by the ALJ, AR 462, is part of a March 28, 2020, emergency room visit by Mr. Leanos after he lost his balance while walking at home without his cane, and fell on his left hip. AR 461. The emergency room ("ER") doctor noted that Mr. Leanos had "a history of chronic back pain following an injury in 2001" and noted that he had been treated with a lumbar epidural in 2015, which resulted in "persistent numbness of the right lower extremity." AR 461–62. The ER

---

including limiting the claimant to a reduced range of sedentary work and the requirement for use of a cane.). But the ALJ failed to explain why these RFC limitations are "appropriate" based on the medical evidence, or why the medical evidence does not support Mr. Leanos's reported symptoms and limitations. Finally, in discussing the persuasiveness of the medical opinions, the ALJ stated that he limited Mr. Leanos to sedentary work "out of an abundance of caution secondary to the claimant's need for a cane and reports of back pain." AR 26. Again, however, this does not explain why the medical evidence does not support Mr. Leanos's reported symptoms and limitations.

doctor also noted that Mr. Leanos had received a "bilateral lumbar median branch block at L3, 4, and 5 on 10/21/2018." AR 462. Finally, the ER doctor noted that "MRI imaging in 2012, 2015, and 2017 has shown mild multi degenerative changes," and x-rays in June 2019 "again showed mild degenerative changes at the lower lumbar region." *Id*. The doctor then listed the results of a lumbar x-ray done on May 25, 2019, an MRI done on April 23, 2017, and an MRI of the lumbar spine done on October 8, 2015. *Id*.

- The May 25, 2019, x-ray showed "disc space narrowing at L4-5 ad L5-S1 without fracture or spondylolisthesis." *Id*.

- The April 23, 2017, MRI showed "minimal degenerative changes of the mid-lower lumbar spine, with minor multilevel disc bulges, as detailed above, greatest at L3-4 > L4-S1, which result in overall - mild effacement of the right lateral recess at L3-4, with mild multilevel inferior neural foraminal narrowings." *Id*. The doctor completing the MRI report opined that "[t]his constellation of relatively minor findings at L3-S1 may correspond to the patient's main symptom[]ologies. Clinical correlation is advised." *Id*.

- The October 8, 2015, MRI showed the following: "L1/2 mild diffuse disc bulge without significant central canal or neuroforaminal narrowing; L2/3 mild diffuse disc bulge with mild bilateral facet arthropathy. Mild bilateral neuroforaminal narrowing is seen worse on the left. No significant central canal narrowing; L3/4 moderate right paracentral disc bulge with mild bilateral facet arthropathy. Mild central canal and mild bilateral neuroforaminal narrowing is seen; L4/5 mild to moderate diffuse disc disease bulge with mild bilateral facet arthropathy. Moderate left and mild right neuroforaminal narrowing seen. No central canal narrowing is identified; L5/S1 mild bilateral facet arthropathy with mild right neuroforaminal narrowing. No significant central canal narrowing." *Id*.

Mr. Leanos argues that "[t]his medical evidence demonstrates abnormal objective findings that support subjective complaints of pain" and argues and that the findings cannot "just be disregarded because they are mild." Doc. 28 at 15. Mr. Leanos especially notes that the doctor reading the April 23, 2017, MRI opined that "[t]his constellation of relatively minor findings at L3-S1 may correspond to the patient's main symptom[]ologies. Clinical correlation

11

is advised," *Id*. (quoting AR 462).  The Court agrees with Mr. Leanos.  At step two, the ALJ found that Mr. Leanos had degenerative disc disease.  AR 20.  "Degenerative disc disease isn't actually a disease, but rather a condition in which a damaged disc causes pain.  This pain can range from nagging to disabling."  Degenerative Disc Disease, Cedars Sinai, available at https://www.cedars-sinai.org/health-library/diseases-and-conditions/d/degenerative-disc-disease.html (last visited June 1, 2022).  Diagnosis of degenerative disc disease is based on a medical history, physical examination, and symptoms of pain.  The amount of disc degeneration may not be of paramount importance.  "It is important to note that the amount of pain does not correlate to the amount of disc degeneration.  Severely degenerated discs may not produce much pain at all, and discs with little degeneration can produce severe pain . . . .  For this reason, a diagnosis of degenerative disc disease should always rely on a combination of a medical history, a physical exam, and any imaging tests ordered."  https://www.spine-health.com/conditions/degenerative-disc-disease/common-symptoms-degenerative-disc-disease (last visited June 1, 2022).[9]

Even assuming that the x-ray and MRI findings were somehow inconsistent with Mr. Leanos's testimony about his pain symptoms, the ALJ cannot disregard his pain testimony solely

---

[9] The Commissioner mis-frames Mr. Leanos's argument as asserting that "the ALJ erred in finding the objective medical evidence supported his RFC."  Doc. 32 at 16.  But what Mr. Leanos argues is that the ALJ gave inadequate reasons for discounting his testimony about his symptoms and limitations.  *See* Doc. 28 at 14–16.  The Commissioner points out that the ALJ also discussed lumbar x-rays from March and May 2020 showing "no acute bony abnormalities" and sacroiliac x-rays from June 2019 "showing no acute findings."  Doc. 32 at 16.  The ALJ did not, however, refer to these records in discounting Mr. Leanos's reported symptoms.  *See* AR 26.  The Commissioner's argument is a post hoc rationalization that is not apparent from the ALJ's decision.  It is not enough for the Commissioner to "suppl[y] some reasons that it believes would support the ALJ's RFC finding" if the "ALJ did not provide these explanations" himself.  *Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007).  "[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."  *Id*. at 1207–08 (citations omitted).

on this basis.  An ALJ must "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."  SSR 16-3p,  2017 WL 5180304, at *5; 20 C.F.R. § 416.929(c)(2).  "A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms."  *Id*.  The ALJ must consider and discuss the following factors in evaluating the "intensity, persistence, and limiting effects of an individual's symptoms":

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, 2017 WL 5180304, at *7–*8 (citing 20 C.F.R. § 416.929(c)(3)).  While an ALJ need not discuss a factor if there is no evidence in the record related to that factor, the ALJ "will discuss the factors pertinent to the evidence of record."  SSR 16-3p, 2017 WL 5180304 at *8.  The ALJ failed to analyze these factors in discounting Mr. Leanos's reported symptoms.  The ALJ summarized some of the information pertinent to these factors in the decision, but the decision is devoid of any actual analysis of these factors and how the ALJ considered the information in connection with Mr. Leanos's subjective symptoms.  *See* SSR 16-3p, 2017 WL

13

5180304, at *10 (decision must be "clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").

The second reason the ALJ gave for rejecting Mr. Leanos's symptoms—that his treatment had been conservative—is not a "specific reason" and is not "supported by the evidence." SSR 16-3p, 2017 WL 5180304, at *10. As an initial matter, what constitutes "conservative" treatment is not defined by the SSA.[10] However, binding guidance from the SSA instructs the ALJ that, in evaluating whether symptom intensity and persistence affect a claimant's ability to perform work-related activities, the ALJ must consider the claimant's "attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed." SSR 16-3p, 2017 WL 5180304, at *9. "Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." *Id*. Conversely, "if

---

[10] Online SPINE-health defines conservative treatment as follows:

> Conservative management is an approach to treating back pain, neck pain and related spinal conditions utilizing non-surgical treatment options, such as physical therapy, medication and injections.
>
> In the context of treating back pain, "conservative" treatment is not the inverse of aggressive treatment. Most episodes of back pain can be treated through conservative care and a combination of several conservative treatments is often recommended to alleviate pain and rehabilitate the lower back.
>
> If a condition requires emergency care, conservative management may be passed up for surgical intervention. In general, surgery for lower back pain is considered only if conservative treatments fail and the pain persists for an extended period of time and limits the individual's ability to function.

SPINE-health, Conservative Treatment Definition, available at https://www.spine-health.com/glossary/conservative-treatment (last visited June 1, 2022).

the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id*. An ALJ may not "find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id*.

      The ALJ neither explains how Mr. Leanos's treatment is conservative, nor shows that he adequately considered Mr. Leanos's attempts to find relief from his pain. Mr. Leanos points out that "the longitudinal medical records . . . show that [he] repeatedly (yet mostly unsuccessfully) attempted to find relief from pain including undergoing physical therapy, MRI's, injections, numerous doctor and specialist appointments and trials of various medications." Doc. 28 at 15; *see also* Doc. 28 at 3–5 (summary of medical records). At the hearing, Mr. Leanos testified that he had taken prescription medication for his pain, attended water physical therapy (of which he was only able to complete 4 out of 12 prescribed sessions due to pain), and received epidurals, hip injections, and back injections. AR 57–58. The ALJ asked Mr. Leanos why he continued getting injections and treatment if it was not helping. AR 58. Mr. Leanos stated:

> Because I'm following the doctors—you know, the doctors are helping me. We're trying to figure out answers for my back so they're suggesting that this might help, this might help, and this might help and so I'm—I'm pretty much leaving my—my health in their hands.

*Id*. The ALJ then asked Mr. Leanos if the doctors had discussed surgery with him, and Mr. Leanos informed the ALJ that he had discussed surgery with his doctor, but that the doctor wanted to get another MRI before recommending surgery. *Id*.; *see also* AR 479 (March 4, 2020, note by Mr. Leanos's doctor indicating that he was still waiting on an MRI of the lumbar spine,

15

which Mr. Leanos was having trouble getting his insurance company to approve). There is no indication in the ALJ's decision that the ALJ considered the "possible reasons" Mr. Leanos had not yet sought surgical treatment for his back pain. *See* SSR 16-3p, 2017 WL 5180304, at *9.

The Commissioner argues that the ALJ adequately discussed Mr. Leanos' medications and attempts to find pain relief by discussing his medical records. Doc. 32 at 17 (citing AR 24–25). But, as discussed above, the pages cited by the Commissioner do not contain any actual analysis of Mr. Leanos's symptom testimony. The ALJ's decision never explained how Mr. Leanos's reported symptoms are inconsistent with any of the evidence. *See* AR 23–26 (objective summary of medical evidence with no analysis of how this evidence supports or contradicts Mr. Leanos's reported symptoms); AR 24 (discussion of persuasiveness of medical opinions with no analysis of how this evidence supports or contradicts Mr. Leanos's reported symptoms).

## VI.   Conclusion

The ALJ committed legal error by failing to adequately assess Mr. Leanos's subjective symptom testimony. The Court remands so that the ALJ can remedy this error. The Court does not reach Mr. Leanos's other arguments, which "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Reverse or Remand for Rehearing (Doc. 28) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent